UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WIPRO, LLC, | ) | |
| | ) | Case No. 4:22-CV-03116 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANT FIRST DATA** |
| | ) | **GOVERNMENT SOLUTIONS, LP'S** |
| FIRST DATA GOVERNMENT | ) | **BRIEF IN SUPPORT OF MOTION TO** |
| SOLUTIONS, LP, | ) | **DISMISS PLAINTIFF'S COMPLAINT** |
| | ) | **FOR FAILURE TO STATE A CLAIM** |
| Defendant. | ) | |
| | ) | |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...............................................................................................................1

II. RELEVANT FACTUAL BACKGROUND.......................................................................2

III. LEGAL STANDARD.........................................................................................................3

IV. ARGUMENT......................................................................................................................5

    A. Wipro has not stated a claim for tortious interference with contract. ...........................6

        1. Wipro has not alleged a critical element of this claim: a breach of contract.................................................................................................................6

        2. Wipro has not alleged that First Data *induced* or *caused* any breach. ..................7

    B. Wipro has failed to state a claim for tortious interference with prospective economic advantage. ......................................................................................................9

    C. At most, Wipro has alleged legitimate competitive activity.........................................11

V. CONCLUSION.................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................3

*Crabar/GBF, Inc. v. Wright*,
   No. 8:16-CV-537, 2019 WL 4016122 (D. Neb. Aug. 26, 2019) .............................................4

*Denali Real Est., LLC v. Denali Custom Builders, Inc.*,
   302 Neb. 984 (2019) ............................................................................................................4, 8

*Dick v. Koski Pro. Grp., P.C.*,
   307 Neb. 599, 950 N.W.2d 321 (2020), *opinion modified on denial of reh'g*,
   308 Neb. 257, 953 N.W.2d 257 (2021) ...............................................................................5, 11

*DP-Tek, Inc. v. AT & T Glob. Info. Sols. Co.*,
   100 F.3d 828 (10th Cir. 1996) ...............................................................................................12

*GPMM, Inc. v. Tharp*,
   No. 8:19-CV-128, 2021 WL 392489 (D. Neb. Feb. 4, 2021) .................................................9

*Nat'l Data Payment Sys., Inc. v. Meridian Bank*,
   212 F.3d 849 (3d Cir. 2000) ..................................................................................................12

*Olsen v. Nelnet, Inc.*,
   392 F. Supp. 3d 1006 (D. Neb. 2019) .....................................................................................8

*Pettit v. Paxton*,
   255 Neb. 279 (1998) ............................................................................................................4, 6

*Summit Restoration, Inc. v. Keller*,
   29 Neb.App. 243 (2020) .........................................................................................................5

*Tepper v. Talent Plus, Inc.*,
   561 F. Supp. 3d 846 (D. Neb. 2021) .......................................................................................7

*The Lamar Co., LLC v. City of Fremont*,
   278 Neb. 485 (2009) ..........................................................................................................5, 11

*Thompson v. Johnson*,
   299 Neb. 819 (2018) ....................................................................................................... passim

*Wipro Ltd. v. State of Nebraska*,
    Case No. CI 19-676 (Neb. D. Ct. Lancaster Cty.) ....................................................................7

**Other Authorities**

45 C.F.R. § 95.611 ...............................................................................................................................2

Fed. R. Civ. P. 12(b)(6).................................................................................................... *passim*

Restatement (Second) of Torts § 768 (1979)............................................................................5, 12

Defendant First Data Government Solutions, LP ("First Data") respectfully submits this Brief in Support of its Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim.

## I. INTRODUCTION

In 2018, the State of Nebraska (the "State") decided to terminate a contract between itself and Plaintiff Wipro, LLC ("Wipro"), under which Wipro was to develop certain Medicaid software for the State. Unwilling to accept the consequences of its own shortcomings, Wipro sued the State for breach of contract in Nebraska state court and then, three years later, commenced this action against First Data, which had been retained by the State as an Independent Verification and Validation ("IV&V") contractor to review and assess the progress of the Wipro project. In its Amended Complaint, Wipro claims that First Data tortiously interfered with its contract and prospective economic advantage with the State.

Wipro's claim against First Data should be dismissed under Fed. R. Civ. P. 12(b)(6) because Wipro has failed to allege essential elements of a tortious interference claim:

- Wipro fails to allege that the State breached the contract between those two parties by terminating their contract (to the contrary, the State had the right to do so at any time without cause); and

- Wipro fails to allege that it had a valid business expectancy in future business with the State with reasonable probability (to the contrary, Wipro alleges that the State wanted no future business with Wipro); and

- Even if Wipro had alleged that the State breached its contract with Wipro (which it did not), or that Wipro had a valid business expectancy (which it did not), Wipro fails to allege that First Data *caused* the State to breach the contract or end the business expectancy (to the contrary, Wipro alleges that the State independently

desired to end its relationship with Wipro and was seeking a pretext to terminate that relationship).

Wipro's failure to allege these essential elements of a tortious interference claim is fatal to its Amended Complaint. Even if Wipro had sufficiently alleged all of the essential elements of a tortious interference claim (whether interference with contract or with prospective economic advantage), its claim against First Data nonetheless fails because, according to the Complaint, First Data is a competitor of Wipro's, and the conduct of which Wipro complains constitutes legitimate competition that as a matter of law cannot sustain a tortious interference claim. For each of these independent reasons, Wipro's Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).

**II.     RELEVANT FACTUAL BACKGROUND**

According to Wipro's Amended Complaint, starting in 2014, Wipro had a contract with the State to provide computer software for the State's Medicaid Eligibility and Enrollment System that met certain criteria established by the federal government. Dkt. 11 ¶ 5. In 2018, the State and Wipro were "in the process of amending their contract," *id.* ¶ 37, through Amendment No. 5. Wipro alleges that the State made a "commitment" to Wipro to amend the agreement, and that the parties "agreed" to the amendment, *id.* ¶¶ 39, 59; however, Wipro does not allege that the State and Wipro ever finalized or signed this amendment. Wipro similarly does not allege that any federal approval was obtained for this anticipated contract change. *See* 45 C.F.R. § 95.611.

The State retained First Data as the IV&V contractor for this project, and its role was to conduct an independent review of Wipro's work product and to report regarding the progress of the project to the State and federal government based on its assessment. *Id.* ¶¶ 9, 15, 16. In its Amended Complaint, Wipro alleges that First Data used this role to "expand and upsell" services

2

to the State "at the expense of First Data's independence and Wipro's contractual relationship with the State," and in an effort to receive "a lucrative contract for the next phase of the Medicaid Eligibility and Enrollment System." *Id.* ¶¶ 22–23, 26. (However, the Amended Complaint does not allege that First Data ever actually obtained this, or any other, further business from the State. *See generally* Dkt. 11.) The Amended Complaint further alleges that First Data sought to "displace[ ]" Wipro and worked to "sabotage the State's commitment to Wipro," by undertaking various actions at the request of the State, including a project to help the State separately license Cúram, the software at the heart of the Medicaid Project, and preparing a report about Wipro's progress that the State could use as a "pretext" to end its relationship with Wipro. *Id.* ¶¶ 33, 34, 49, 51, 60A; *see also id.* ¶¶ 55, 57 (claiming First Data did "the State's bidding" and "carr[ied] out [the State's] will"). As discussed below, even if all of these allegations were true, and they are not, Wipro has failed to allege a sustainable claim against First Data.

### III. LEGAL STANDARD

A complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must show that it has alleged a "plausible" claim, supported by sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purpose of this motion, the court will assume a plaintiff's well-pleaded facts to be true. *Id*. However, a court need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly*, 550 U.S. at 556.

3

To "succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted." *Thompson v. Johnson*, 299 Neb. 819, 828 (2018). "One of the basic elements of tortious interference with a business relationship requires an intentional act that **induces** or **causes** a breach or termination of the relationship or expectancy." *Denali Real Est., LLC v. Denali Custom Builders, Inc.*, 302 Neb. 984, 1004 (2019) (emphasis added).

A tortious interference with contract claim requires establishing that there was, in fact, a breach of contract. *See, e.g.*, *Denali Real Est.*, 302 Neb. at 1005 ("[W]hen the defendant's interference is directed toward the third party, with whom the plaintiff has contracted, and the interference did not cause the third party to breach the contract, it is difficult to conceive how the plaintiff would prove causation."); *Pettit v. Paxton*, 255 Neb. 279, 288 (1998) (same). A tortious interference with business expectancy claim requires establishing that there was, in fact, a valid expectancy, which "will generally require proof that there was a reasonable likelihood or probability of a business relationship." *Crabar/GBF, Inc. v. Wright*, No. 8:16-CV-537, 2019 WL 4016122, at *15 (D. Neb. Aug. 26, 2019).

To assess whether interference with a business relationship is unjustified or "improper," courts will consider "(1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests of the other with which the actor's conduct interferes, (4) the interests sought to be advanced by the actor, (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (6) the proximity or remoteness of the actor's conduct to the interference,

and (7) the relations between the parties." *Thompson*, 299 Neb. at 829 (citing Restatement (Second) of Torts). "[V]alid competition[ ] cannot be the basis for a tortious interference claim," since such alleged interference is not unjustified. *The Lamar Co., LLC v. City of Fremont*, 278 Neb. 485, 498 (2009). Valid competition exists where "(a) the relation concerns a matter involved in the competition between the actor and the other and (b) the actor does not employ wrongful means and (c) his action does not create or continue an unlawful restraint of trade and (d) his purpose is at least in part to advance his interest in competing with the other." Restatement (Second) of Torts § 768 (1979).[1] The Nebraska Supreme Court has held that the "party alleging tortious interference has the burden of proving that the conduct did not fall within the competitor's privilege." *Dick v. Koski Pro. Grp., P.C.*, 307 Neb. 599, 681, 950 N.W.2d 321, 378 (2020), *opinion modified on denial of reh'g*, 308 Neb. 257, 953 N.W.2d 257 (2021).

## IV. ARGUMENT

Wipro's Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Wipro asserts only one "Claim for Relief" against First Data, styled: "Tortious Interference with Contract and Prospective Economic Advantage." Dkt. 11 at pp. 15–16. Wipro, however, appears to base its claim on two separate tort theories: (i) tortious interference with contract, and (ii) tortious interference with prospective economic advantage. *Id.* at ¶ 63 ("Absent First Data's intentional and tortious interference, Wipro would have [i] successfully completed the contract and [ii] realized the economic advantage of both the Contract and the proposed Amendment No. 5.") & *id.* at ¶ 62 ("As a direct and proximate result of First Data's acts, Wipro has been damaged in the amount of its [i] lost contractual revenue with

---

[1] The Restatement (Second) of Torts §768 has been adopted in Nebraska. *See Summit Restoration, Inc. v. Keller*, 29 Neb.App. 243, 254 (2020).

5

the State, and in the amount of [ii] its prospective economic advantage represented by Amendment No. 5.").

Wipro has not alleged facts that, if true, would be sufficient to support either theory. For this reason, Wipro's Complaint must be dismissed for failure to state a claim.

A. **Wipro has not stated a claim for tortious interference with contract.**

1. **Wipro has not alleged a critical element of this claim: a breach of contract.**

To support a claim for tortious interference with a business relationship, a plaintiff must prove (1) the existence of a valid business relationship, (2) knowledge by the interferer of the relationship, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship was disrupted. *See Thompson*, 299 Neb. at 828. A "critical element[ ] of the tort of intentional interference with [a] business relationship[ ]" is establishing that the third party (with whom the defendant allegedly interfered) *actually breached* their contract with plaintiff. *See Pettit*, 255 Neb. at 287. "[W]hen the defendant's interference is directed toward the third party, with whom the plaintiff has contracted, and the interference did not cause the third party to breach the contract, it is difficult to conceive how the plaintiff would prove causation." *Id*. at 288.

Nowhere in its Amended Complaint does Wipro allege that the State breached its contract with Wipro. The word "breach" does not appear anywhere in the text of the Complaint. *See generally* Dkt. 11. The Complaint does not append the text of its contract with the State, nor cite to any language therein to suggest that its terms were violated. *Id*. In sum, Wipro does not plead any specific allegations as to the terms of the agreement between Wipro and the State; nor as to whether or how, specifically, the agreement was allegedly breached.

Wipro is unable to adequately allege that the State's termination of its agreement was a breach of contract, because as it acknowledged in its separate suit against the State, the State had

6

the unilateral right to terminate the parties' contract for any reason. *See* Ex. 1-A, *Wipro Ltd. v. State of Nebraska*, Case No. CI 19-676, Transaction ID 0014571246 (Amended Compl.) ¶¶ 7, 10 (Neb. D. Ct. Lancaster Cty. Oct. 26, 2021) ("State Ct. Am. Compl.") ("ADDENDUM ONE . . . was expressly made part of the Contract . . . [S]ection Y.2 of ADDENDUM ONE provides as follows: The State, in its sole discretion, ***may terminate the contract for any reason upon 30 days written notice to the contractor***. . . .") (emphasis added).[2] Indeed, as a result of this express language, the court in Wipro's parallel state court litigation against the State dismissed Wipro's core breach of contract claim (but allowed two others to stand).[3]

In this case, Wipro did not even attempt to allege the bare minimum to establish breach of contract. Since breach of contract is an essential element of a tortious interference with contract claim, and Wipro has not adequately pled (and cannot adequately plead) any breach of contract, this claim must be dismissed under Fed. R. Civ. P. 12(b)(6).

2.  **Wipro has not alleged that First Data *induced* or *caused* any breach.**

Even assuming *arguendo* that Wipro had adequately pled breach of contract—which it has not—Wipro's Complaint also fails to establish that First Data *caused* or *induced* that breach. Instead, Wipro's Complaint alleges that *the State* sought to terminate its relationship with Wipro, and that First Data acted at the State's direction to provide the State with a pretext to do so.

---

[2] The Court may consider Exhibits 1-A and 1-B without converting the current motion to one for summary judgment as both are a part of the public record. *Tepper v. Talent Plus, Inc.*, 561 F. Supp. 3d 846, n.1 (D. Neb. 2021) ("On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court may consider materials that are part of the public record or do not contradict the complaint, and materials that are necessarily embraced by the pleadings.").

[3] In Wipro's parallel litigation against the State in state court, the state court dismissed Wipro's breach of contract claim based on violation of the covenant of good faith and fair dealing, allowing only breach of contract claims related to payment of outstanding balances and a four-month suspension of the agreement, along with claims in equity, to stand. *See* Ex. 1-B, *Wipro Ltd. v. State of Nebraska*, Case No. CI 19-676, Order at 5–6 (Neb. D. Ct. Lancaster Cty. Apr. 1, 2021); Ex. 1-A, State Ct. Am. Compl. at pp. 8–11.

Assuming Wipro's allegations are true, as the court is required to do on a motion to dismiss, Wipro *at most* alleges that the State wanted to terminate its agreement with Wipro, and that First Data took actions *at the State's direction* that could provide grounds to the State to terminate its relationship with Wipro, if the State so elected. This is not sufficient to state a claim against First Data for tortious interference with contract.

To sustain a claim for tortious interference, Wipro must allege among other things, "(4) proof that the interference ***caused*** the harm sustained" (in this case, the alleged breach of the State's contract with Wipro). *Thompson*, 299 Neb. at 828 (emphasis added); *see also Denali Real Est.*, 302 Neb. at 1004 (tortious interference requires "an intentional act that ***induces*** or ***causes*** a breach or termination of the relationship or expectancy") (emphasis added). As explained further below, Wipro has not alleged that First Data's conduct induced the State's breach—but rather, that the State's alleged desire to breach *induced* First Data's conduct. This is the wrong sequence. Moreover, as a party to the agreement, the State could not tortiously interfere with its own contract. *Olsen v. Nelnet, Inc.*, 392 F. Supp. 3d 1006, 1018 (D. Neb. 2019) ("a party cannot be held liable in tort for interfering with its own contract"). Therefore, Wipro's Complaint fails to state a claim upon which relief can be granted.

According to the Complaint, the State had an independent, and antecedent, goal to terminate its relationship with Wipro. The Complaint alleges that the State had a desire and "plan to part with Wipro." Dkt. 11 ¶ 39. The State then allegedly took steps to facilitate that goal, by enlisting the help of First Data. The State allegedly backed Wipro into a corner during an August 2018 meeting, in which it "badgered Wipro into stating how much of the 'MAGI' portion of the project was complete." *Id.* ¶ 38. After Wipro provided an informal estimate, the State then allegedly asked First Data to "devise a test that Wipro could not pass" based on this representation,

8

culminating in First Data's 2018 report analyzing Wipro's progress. *Id.* ¶ 40. Wipro alleges that this report was not the product of independent review but instead prepared at "the State's bidding" and "carr[ied] out [the State's] will to get the project terminated." *Id.* ¶¶ 55, 57. Notably, Wipro does not allege that First Data's report wrongfully aimed to persuade the State that Wipro had made no progress; instead, Wipro alleges that the State had *already decided* to terminate Wipro before it had requested and received First Data's report. The report was written, according to the Complaint, to fulfill the *State's* goal "to get the project terminated without regard to the law or the facts." *Id.* ¶¶ 42, 55.

Not only has Wipro failed to allege that the State actually breached its contract, or that First Data caused that breach—to the contrary, Wipro has alleged that the *State* caused any such conduct because the State independently desired and sought to terminate its relationship with Wipro. These allegations, even if true, could not support a claim for tortious interference with contract.

**B.     Wipro has failed to state a claim for tortious interference with prospective economic advantage.**

To maintain a claim for tortious interference with a business expectancy, a plaintiff must prove (1) the existence of a valid expectancy, (2) knowledge by the interferer of the expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose expectancy was disrupted. *Thompson*, 299 Neb. at 828. "[P]roving a business expectancy [is] 'valid' will generally require proof that there was a reasonable likelihood or probability of a business relationship." *GPMM, Inc. v. Tharp*, No. 8:19-CV-128, 2021 WL 392489, at *5 (D. Neb. Feb. 4, 2021) (internal citation omitted).

Wipro fails to allege a valid business expectancy with reasonable probability. Wipro claims that its lost business expectancy was the failure to secure and execute Amendment No. 5 to its

9

contract with the State, which it alleges "had been agreed to." Dkt. 11 ¶ 59. However, in light of the full context of Wipro's allegations, Wipro has not alleged a plausible, let alone reasonably probable, business expectancy with the State.

To succeed on its tortious interference claim, Wipro must plead and prove that there was a reasonable probability of obtaining additional business from the State *but for* First Data's alleged interference. Wipro has not alleged that the State made efforts to formalize Amendment No. 5 into a written agreement, nor that it had obtained federal authorization to effectuate any such amendment. Wipro has not alleged that First Data's conduct (allegedly undertaken at the State's direction) caused the State to change its mind about formalizing the amendment. Instead, according to the Amended Complaint, Wipro has alleged that the State did not want to engage in future business with Wipro at all.

As explained *supra* § IV.A.2, Wipro asserts that *the State* sought to end its relationship with Wipro, and that the State requested that First Data provide it with pretext for termination. While Wipro alleges that the State and Wipro orally agreed to Amendment No. 5 on June 22, 2018, Dkt. 11 ¶ 32, it also alleges that less than seven weeks later, on August 7, the State had already set in motion its "plan to part with Wipro," for which it requested First Data's assistance, *id.* ¶ 39. Wipro has not alleged that First Data's conduct caused the State to change its mind about formalizing the amendment. Rather, Wipro alleges that the State *had already decided* it did not want to formalize the amendment: it sought "contrived evidence to cancel the Project and renege on the State's commitment to amend the contract with Wipro," *id.* ¶ 39, which First Data provided at the State's behest for "the specific purpose of fulfilling the [State's] wishes" to end its Wipro relationship. *Id.* ¶ 42. According to the Amended Complaint, the State independently wanted to terminate Wipro, and undertook efforts to make that happen.

10

Wipro has not alleged that the State desired to maintain a relationship with Wipro absent First Data's "interference"; but rather, contends that shortly after orally agreeing to the agreement, the State sought to backtrack, and sought a report from First Data that would enable it to cut its ties to Wipro. Under this set of alleged circumstances, Wipro cannot plausibly claim that it had any realistic "expectancy" of future business with the State, with which First Data interfered. To the contrary: according to the Amended Complaint, the State wanted no future business with Wipro at all. This renders the probability of any future expectancy less than plausible.

In addition to failing to show any probable "expectancy," Wipro's allegations also fail to demonstrate that First Data was the cause of the State's decision to terminate its relationship with Wipro. For the reasons explained above and at *supra* § IV.A.2, Wipro's allegations flow in the opposite direction: Wipro contends that *the State* sought to end its relationship with Wipro, and sought First Data's help in facilitating this termination. This is the opposite of a claim that First Data caused the State to desire, and then decide, to end its relationship with Wipro. And this is similarly fatal to Wipro's tortious interference with prospective economic advantage claim.

C.  **At most, Wipro has alleged legitimate competitive activity.**

An alleged interference with a business relationship is not unjustified where the alleged interferer was engaged in legitimate competitive activity. *Koski Pro. Grp.*, 307 Neb. at 680–81; *see also The Lamar Co.*, 278 Neb. at 498 ("an intentional, but justified, act of interference, such as valid competition, cannot be the basis for a tortious interference claim"). "[E]ven if part of the [defendant's] motivation . . . was based on ill will, as a competitor . . . [defendant] is allowed to make efforts to advance its . . . business." *The Lamar Co.*, 278 Neb. at 498. Legitimate competition exists where "(a) the relation concerns a matter involved in the competition between the actor and the other and (b) the actor does not employ wrongful means and (c) his action does not create or continue an unlawful restraint of trade and (d) his purpose is at least in part to advance his interest

11

in competing with the other." Restatement (Second) of Torts § 768 (1979). In cases involving alleged interference with an at-will contract or business expectancy the "wrongful means" requirement is only satisfied by showing "independently actionable conduct on the part of the defendant." *See Nat'l Data Payment Sys., Inc. v. Meridian Bank*, 212 F.3d 849, 857 (3d Cir. 2000) (quoting *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 531 (3d Cir.1998)); *see also DP-Tek, Inc. v. AT & T Glob. Info. Sols. Co.*, 100 F.3d 828 (10th Cir. 1996) (holding the "wrongful means" element requires independently actionable conduct).

Wipro has alleged that First Data is a competitor whose challenged conduct was legitimate competitive activity. Specifically, Wipro alleges that First Data's actions were part of its plan to "upsell" the State, Dkt. 11 ¶ 26, and that First Data specifically hoped to secure "a lucrative contract for the next phase of the Medicaid Eligibility and Enrollment System," *id.* ¶ 23—the very system at the heart of Wipro's existing contract with the State. Wipro alleges that First Data's business benefit was at the direct expense of Wipro's: "[First Data] manipulated the actions of IV&V in order to increase the State's reliance on First Data and secure future business for First Data, at the expense of . . . Wipro's contractual relationship with the State." *Id.* ¶ 22. Wipro also specifically alleges that First Data worked for the State on the identical software that Wipro was working on, asserting that First Data was "actively working on a project to determine the pricing for Cúram, the software at the heart of [Wipro's] Project." *Id.* ¶ 34.

Under the plain text of the allegations in Wipro's Complaint, Wipro charges that First Data is a competitor to Wipro, and that its conduct assisting the State to secure alternate software licensing and drafting a report critical of Wipro were undertaken with the goal of securing First Data a direct and competing business relationship with the State. This satisfies elements (1) and (4) to establish that any interference by First Data was not improper because it reflected legitimate

competition. Wipro has not alleged a restraint of trade, element (3), nor has it shown that First Data employed wrongful means (such as fraud) to interfere with the business relationship between Wipro and the State, as required under element (2). Therefore, Wipro's Complaint should be dismissed for failure to state a claim because any alleged interference by First Data was legitimate competition that was justified as a matter of law.

## V. CONCLUSION

For the above-stated reasons, First Data respectfully requests that the Court dismiss Wipro's Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted.

Dated: August 25, 2022

                                                Respectfully submitted,

By: /s/ Melissa J. Tea
    Melissa J. Tea (*pro hac vice*)
    Melissa R. Alpert (*pro hac vice*)
    K&L GATES LLP
    K&L Gates Center
    210 Sixth Avenue
    Pittsburgh, PA 15222
    Phone: (412) 355-8385
    Fax: (412) 355-6501
    Melissa.Tea@klgates.com
    Melissa.Alpert@klgates.com

    William F. Hargens (#16578)
    Matthew G. Munro (#26190)
    McGrath North Mullin & Kratz, PC LLO
    First National Tower, Suite 3700
    1601 Dodge Street
    Omaha, NE 68102
    Phone: (402) 341-3070
    Fax: (402) 341-0216
    whargens@mcgrathnorth.com
    mmunro@mcgrathnorth.com

*Attorneys for Defendant First Data Government Solutions, LP*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on the 25th day of August, 2022, the above and foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Richard P. Jeffries
Andre R. Barry
CLINE WILLIAMS WRIGHT
JOHNSON & OLDFATHER, L.L.P.
Sterling Ridge
12910 Pierce Street, Suite 200
Omaha, NE 68144
rickjeffries@clinewilliams.com
abarry@clinewilliams.com
*Attorneys For Plaintiff*

                                              /s/ Melissa J. Tea

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d), I hereby certify that this brief includes 4305 words, including the footnotes, caption, headings, and quotations. In making this certification, I have relied on the word count of the computer program used to prepare the brief, Microsoft Word 2016.

/s/ Melissa J. Tea