UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| WIPRO, LLC, | ) |
| | ) Case No. 4:22-CV-03116 |
| Plaintiff, | ) |
| | ) |
| v. | ) **DEFENDANT FIRST DATA** |
| | ) **GOVERNMENT SOLUTIONS, LP'S** |
| FIRST DATA GOVERNMENT | ) **REPLY IN SUPPORT OF MOTION TO** |
| SOLUTIONS, LP, | ) **DISMISS PLAINTIFF'S COMPLAINT** |
| | ) **FOR FAILURE TO STATE A CLAIM** |
| Defendant. | ) |
| | ) |

**I.   INTRODUCTION**

As much as Wipro might like to shift the blame for its termination by the State of Nebraska (the "State") to someone other than itself, its Opposition to First Data's Motion to Dismiss reveals that it cannot state a legally sufficient claim against First Data. Although Wipro's Amended Complaint is replete with allegations that First Data interfered with Wipro's contract with the State to advance its own interests, Wipro now concedes that First Data is not a competitor of Wipro. In other words, First Data would not (and did not) get any work from the State that Wipro might have had but for First Data's alleged interference.

Setting aside First Data's utter lack of motivation to interfere with Wipro's contract with the State, nothing in Wipro's Opposition changes the conclusion that the Amended Complaint fails to sufficiently allege that First Data's conduct caused the State to terminate its contract with Wipro, or that Wipro had a valid business expectancy in a future relationship with the State. Bald allegations are not enough, particularly when they are contradicted by admitted facts. The Amended Complaint should be dismissed.

**II.   WIPRO HAS NOT SUFFICIENTLY ALLEGED THAT FIRST DATA CAUSED THE TERMINATION OF ITS CONTRACT WITH THE STATE**

As explained in First Data's Memorandum in Support of its Motion to Dismiss, even when read in the light most favorable to Wipro, the Amended Complaint at most alleges that the State wanted to terminate its relationship with Wipro and asked First Data to assist with that plan. Dkt. 18 ("Motion") at 7–9. Plaintiff's Opposition claims that its Amended Complaint "details a course of conduct by First Data beginning at least as early as April of 2018," where First Data sought to "erod[e] the State's relationship with Wipro for First Data's own perceived benefit," and that in just a few short months beginning April 2018 and culminating in an August 2018 report, First Data "caused the State to shift from augmenting its relationship with Wipro to terminating it." Dkt. 20

("Opposition") at 10. But the Amended Complaint does no such thing. It includes very few, threadbare and conclusory allegations as to First Data's conduct between April and August 2018 that, even if true,[1] would be insufficient to support a finding that First Data caused the State to terminate its contract with Wipro. Moreover, a "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 795 (8th Cir. 2021) (internal citation and quotation marks omitted). Read as a whole, Wipro's Amended Complaint alleges a set of facts in which the *State* directed First Data's conduct, and not the other way around.

Wipro cites to its Amended Complaint at ¶¶ 26–39 to support its claim that it alleged First Data caused the State to seek to terminate its relationship with Wipro. Opposition at 10. What those allegations actually consist of, however, are several unfounded assertions as to First Data's alleged "motive" and threadbare and conclusory allegations as to four specific acts between April 2018 and June 2018 which it claims show efforts to sabotage Wipro. Wipro then asks this Court to connect these unfounded assertions and threadbare and conclusory allegations with innuendo to

---

[1] Wipro incorrectly claims: "First Data does not deny that it had a duty of independence or that it breached that duty" in its Motion. Opposition at 2. This is a red herring for multiple reasons. First, the existence of a legal duty owed to a third party is not an element of the tortious interference with contract claim that Wipro has asserted against First Data, so any discussion of duty is wholly irrelevant. In any event, Wipro provides no basis for its claim that First Data owes it a duty, because no such basis exists. Wipro's Amended Complaint alleges that 45 C.F.R. § 95.626 creates such a duty. Dkt. 11 ("Am. Compl.") at ¶ 12. But contrary to Wipro's allegations, the cited section does not create any legal duty owed to any specific entity; it merely provides that an IV&V contractor (like First Data) must be independent from the entity receiving federal funds (like the State). The regulation does not create a duty owed to a third party like Wipro, nor does it create an independent claim in favor of Wipro against First Data. Not surprisingly then, Wipro does not purport to sue First Data for breach of any duty, nor could it. *See Kimminau v. City of Hastings*, 291 Neb. 133, 147, 864 N.W.2d 399, 411 (2015) ("If there is no duty owed, there can be no claim for negligence); *see also Lecher-Zapata v. QBE Ins. Corp.*, No. 4:19-CV-3053, 2020 WL 2793390, at *5 (D. Neb. May 29, 2020) (holding that an existing duty does not extend to a third-party if extending that duty would potently conflict with the original duty owed).

find a campaign by First Data "to undermine the State's confidence in Wipro," Opposition at 10, where none exists.

As an initial matter, whether or not First Data had a "motive" to cause the State to terminate its contract with Wipro is irrelevant and has no bearing on the issue at hand, which is whether Wipro has sufficiently alleged that First Data *actually caused* the State to terminate its contract with Wipro. Alleging that First Data had a motive to interfere with Wipro's contract with the State is a far cry from pleading facts sufficient to establish that First Data actually acted on that alleged motive, which is what Wipro must do in order to survive a motion to dismiss.

Wipro pleads only four alleged acts or omissions by First Data prior to the August 7, 2018 meeting to support its claim that First Data sought to "erod[e] the State's relationship with Wipro for [its] own perceived benefit," and "in a matter of months" "caused the State to shift . . . to terminating it[s]" relationship with Wipro. Opposition at 10. But none of the alleged acts or omissions suffice to establish the requisite causation:

- First, Wipro alleges that, in April 2018, First Data *perceived* Wipro's project was "out of control," that Wipro was "overcommitted and under delivering," but that First Data *did not* report these observations to the State. Am. Compl. at ¶ 30. This does not constitute an allegation that First Data caused the State to terminate its relationship with Wipro.

- Second, Wipro alleges that, in May 2018, First Data submitted an unspecified report to the State, but refused to include the sentence: "conversion to Cúram data model is difficult." *Id*. ¶ 31. Wipro does not allege that this sentence was omitted for the purpose of sabotaging Wipro—and in any case, casting this editorial choice as an active act of sabotage would require speculation at best. Again, this does not constitute an allegation that First Data caused the State to terminate its relationship with Wipro.

- Third, Wipro alleges that, during the second quarter of 2018, First Data was "working on a project to determine the pricing for Cúram," which Wipro alleges had the purpose of "prepar[ing] the State to attempt to duck its contractual obligations to Wipro by terminating Wipro and obtain[ing] an independent license to Cúram." *Id*. ¶ 34. Wipro alleges only one possible motive for this project— undermining Wipro's relationship—and alleges no facts to support that motive,

3

      beyond its bare assertion. An allegation that First Data helped the State look into obtaining a separate license does not constitute an allegation that First Data caused the State to terminate its relationship with Wipro.

- Fourth, Wipro alleges that on June 27, 2018, First Data "plant[ed] seeds of doubt around moving forward with the RTC tool [a software development and collaboration tool]." *Id.* ¶ 36. Again, an allegation that First Data (who Wipro alleges had a role reviewing and monitoring the technology being used on the project, *id.* ¶¶ 10, 14) had concerns about a technology choice does not constitute an allegation that First Data caused the State to terminate its relationship with Wipro.

      As the discussion above demonstrates, none of these allegations actually state that First Data's actions caused the State to terminate its relationship with Wipro. Instead, Wipro asks this court to allow its claim to proceed on the basis of innuendo, purported motives, and conclusory allegations. The court, however, is "not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Warmington*, 998 F.3d at 796 (quoting *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009)).

      As explained in First Data's Motion, Wipro's allegations of the circumstances at and after the August 7, 2018 meeting, even if true, establish that the *State* expressed displeasure with Wipro's performance and sought to terminate its relationship with Wipro, and solicited First Data's assistance with effectuating its decision. Motion at 7–9. Wipro alleges that the State "badgered Wipro into stating" how much of project was completed at that meeting, Am. Compl. at ¶ 38, that the State "made [its] wish clear that First Data devise a test that Wipro could not pass," *id.* at ¶ 40, that First Data created a report "for the specific purpose of fulfilling the [State's] wishes," *id.* at ¶ 42, and that First Data was "doing the State's bidding," *id.* ¶ 57.

      Implicitly acknowledging that it has not clearly pled causation, Wipro is left to argue that the sum total of its allegations require "a fair inference—perhaps the only fair inference—that the

4

State would not have terminated its relationship with Wipro without active participation by First Data in violation of its duty of independence." Opposition at 11. That would be a stretch unsupported by the allegations. The fairer inference is that, after four years of seeing Wipro's performance on the project (or lack thereof), the State independently sought to terminate the parties' working relationship. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The plaintiff instead needs to show "allegations *plausibly suggesting*" defendant's liability with "enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 545 (internal citation and quotations omitted) (emphasis added). These allegations do not meet that threshold.

Finally, rather than point to facts establishing First Data as the "cause" of Wipro's alleged injury, Wipro instead attempts to lower the legal bar by claiming that Wipro only needs to show that First Data was "a substantial factor" in bringing about its injury. Opposition at 9. But Wipro readily admits that this "substantial factor" test in causation has never been applied in the context of tortious interference by the Nebraska Supreme Court—and they point to no Nebraska case at all applying this test to any tortious interference case. *Id*. Moreover, a "substantial factor" test in the context of this case would be particularly inappropriate because the only other factor interfering with the relationship that Wipro's Amended Complaint and Opposition identify is *the State itself*. *See id*. at 9–10 ("even if one were to infer from the pleadings **that the State had an independent desire to terminate the contract** . . . the standard applicable here is not whether First Data's actions were the sole cause, but whether they were a substantial factor") (emphasis added); *see also generally* Am. Compl. As previously noted in First Data's Motion, the State cannot be an alleged

5

causative factor in a tortious interference claim, because "a party cannot be held liable in tort for interfering with its own contract." *Olsen v. Nelnet, Inc.*, 392 F. Supp. 3d 1006, 1018 (D. Neb. 2019).

### III. WIPRO HAS NOT SHOWN A REASONABLE BUSINESS EXPECTANCY

In its Motion to Dismiss, First Data explained that Wipro failed to allege that it had a valid business expectancy, meaning a reasonable likelihood of a business relationship, Motion at 9–11, which standard Wipro agrees with, Opposition at 12. Nothing in Wipro's opposition is sufficient to rebut First Data's argument. To the contrary, Wipro's own allegations indicate that the State had no interest in, and in fact actively sought to prevent any future relationship from occurring. *See* Motion at 9–11. Wipro instead responds that *but-for* First Data's interference, Wipro would have had a valid relationship and expectancy. Opposition at 12–13. However, for the reasons described above, *supra* § II, Wipro has not plausibly alleged that First Data caused the State to terminate its contract with Wipro. It instead merely alleges that the State independently sought to terminate its relationship with Wipro, and asked First Data to assist the State in achieving that goal.

Moreover, while Wipro alleges that the State and Wipro reached an agreement on a "new approach" that "was to be reflected in . . . Amendment No. 5," *id.* ¶¶ 32–33, it does not allege that the parties ever obtained federal approval for such a change to the preexisting agreement, nor sought such approval. As First Data noted in its Motion, the parties could not unilaterally amend this agreement to implement a federal program, and needed federal approval before any such amendment could take effect. Motion at 2. Wipro's Opposition does not dispute this requirement nor claim that the parties initiated, let alone obtained, federal approval. This renders any claims to an expectancy even more remote.

## IV. CONCLUSION

For the reasons stated in its initial Motion and herein, First Data respectfully requests that the Court dismiss Wipro's Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted.

Dated: September 29, 2022

        Respectfully submitted,

        By: s/ Melissa J. Tea
            Melissa J. Tea (admitted *pro hac vice*)
            Melissa R. Alpert (admitted *pro hac vice*)
            K&L GATES LLP
            K&L Gates Center
            210 Sixth Avenue
            Pittsburgh, PA 15222
            Phone: (412) 355-8385
            Fax: (412) 355-6501
            Melissa.Tea@klgates.com
            Melissa.Alpert@klgates.com

            William F. Hargens (#16578)
            Matthew G. Munro (#26190)
            McGrath North Mullin & Kratz, PC LLO
            First National Tower, Suite 3700
            1601 Dodge Street
            Omaha, NE 68102
            Phone: (402) 341-3070
            Fax: (402) 341-0216
            whargens@mcgrathnorth.com
            mmunro@mcgrathnorth.com

        *Attorneys for Defendant First Data Government Solutions, LP*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on the 29th day of September, 2022, the above and foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Richard P. Jeffries
Andre R. Barry
CLINE WILLIAMS WRIGHT
JOHNSON & OLDFATHER, L.L.P.
Sterling Ridge
12910 Pierce Street, Suite 200
Omaha, NE 68144
rickjeffries@clinewilliams.com
abarry@clinewilliams.com
*Attorneys For Plaintiff*

                                            s/ Melissa J. Tea

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d), I hereby certify that this brief includes 2,359 words, including the footnotes, caption, headings, and quotations. In making this certification, I have relied on the word count of the computer program used to prepare the brief, Microsoft Word 2016.

/s/ Melissa J. Tea